IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § | 3:08-CV-0756-K |
| BULK SERVICES TRANSPORTATION, INC., and DONALD SMITH a/k/a DONNY SMITH, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff FleetCor Technologies Operating Company, LLC's Motion for Summary Judgment (Doc. No. 27). Because there are no genuine issues of material fact, the Court **GRANTS** the motion and enters summary judgment for Plaintiff.

    **I.**    **Factual and Procedural Background**

Plaintiff FleetCor Technologies Operating Company, LLC ("FleetCor") is a Georgia limited liability company that provides businesses a method to pay for fuel and maintenance services for their fleet vehicles. Its "Fuelman" charge cards allow customers to purchase fuel and services at locations across the country.

Defendant Bulk Services Transportation, Inc. ("Bulk Services") is a trucking company that specializes in the transportation of bulk products. Bulk Services is based in Terrell, Texas, within this judicial district. Defendant Donald Smith ("Smith") is Bulk Services' president.

In May 2005, Bulk Services submitted a Fuelman credit application signed by Smith as

personal guarantor. The application agreement provided that Smith, as guarantor, "unconditionally and irrevocably" guaranteed the payment and performance of Bulk Services. FleetCor approved the application and issued "access cards" to Bulk Services. The cards allowed Bulk Services employees to purchase fuel and maintenance services on credit. FleetCor sent weekly invoices for the charges, some of which went unpaid. Bulk Services contends that in the parties' course of dealing, FleetCor allowed it to make partial payments, late payments, and to catch up on delinquencies and past-due amounts.

In June 2007, FleetCor sent a letter to Bulk Services demanding payment of $243,951.01 in overdue charges. Bulk Services sent FleetCor two checks totaling $15,000 in July and August 2007. FleetCor filed this suit in August 2007, contending that Defendants owed an outstanding balance of $232,374.83. Bulk Services suspended its operations in June 2008.

Defendants admit they owe money to Plaintiff, but dispute the amount. In its Answer (Doc. No. 15), Defendants admit they "failed to remit some of the money due and owing to Plaintiff, but denies that they owe $243,951 to Fleetcor." Answer ¶ 11. Defendants' response asserts that the $15,000 was not credited to Bulk Services' account, and "there is some double billing" in Plaintiff's calculation of the amount owed. Defendants contend that the course of dealing and performance between the parties reflects an implied contract that would allow late payments. Defendants further assert the affirmative defense of accord and satisfaction.

**II.     Legal Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled

to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321–25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**III.   Analysis**

A federal court must apply the substantive law of the forum state in a diversity case. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234, 1240 (5th Cir. 1986). Consequently, Texas state law is controlling.

To recover for breach of contract under Texas law, a plaintiff must show (1) the existence of a valid contract; 2) that it performed or tendered performance under the contract; 3) breach of the contract by defendant(s); and 4) damages to the plaintiff resulting from the breach. *See Lewis v. Bank of America N.A.*, 343 F.3d 540, 544–45 (5th Cir. 2003) (enumerating elements under Texas law). Smith, as Bulk Services' president, admits he signed the credit agreement, that FleetCor provided his company credit for fuel and maintenance services, and that Bulk Services failed to pay the amount in full. Thus, Defendants do not effectively dispute the elements of the claim, instead only contesting the amount of damages for which they are liable.

### A.   Bulk Services' Liability

Defendant Bulk Services admits that it is liable for some outstanding balance owed to Plaintiff. Defendants have placed this amount close to $200,000, whereas Plaintiff claims it is owed exactly $232,374.83. Plaintiff's detailed records from May 30, 2005, to August 11, 2007, support its calculation. In contrast, Defendant has provided no detailed alternative calculation and no documentation that certain charges were the result of double billing. Plaintiff has presented an analysis conducted by Defendants' own accountant showing the $232,374.83 owed to FleetCor. Plf.'s App 26. Thus it appears that Plaintiff and Defendants agree that this was the amount owed in August 2007, when this suit was filed.

Defendants argue it was actually FleetCor that breached the agreement when it terminated Bulk Services' ability to use the access cards in June 2007. Defendants contend the prior course of dealings and performance between the companies created an implied contract that allowed Defendants "to pay late, make partial payments, and alter the terms and conditions of the contract." Def.'s Resp. 10. Defendants cite Tex Bus. & Comm. Code §§ 1.303, 2.207 to contend that the course of performance and course of dealing between the parties, evidenced by Plaintiff's acquiescence to late or non-existent payments, effectively modified the express terms of the contract.

Plaintiff contends the course of dealing between the parties reflected its initial willingness to work amicably to obtain payment without resorting to more onerous measures, like terminating Defendants' ability to use the access cards or filing a lawsuit. Plaintiff notes that it provided due dates on all statements, charged late fees, and actively sought payment in full. Defendants have provided no evidence Plaintiff acquiesced to non-payment or that either party genuinely considered

the terms of the contract to be changed by implication. "[T]he express terms of an agreement and any applicable course of performance, course of dealing, or usage of trade must be construed whenever reasonable as consistent with each other. If such a construction is unreasonable express terms prevail over course of performance, course of dealing, and usage of trade." TEX. BUS. & COMM. CODE § 1.303(e). The express terms of the contract required payment and must necessarily prevail over an unreasonable construction that would allow Defendants to forego paying the debt or to pay at its leisure. Additionally, Defendants cannot demonstrate that they performed under the contract, by paying for the services provided, as the accruing debt spiraled well above $200,000. It is clear that Defendants breached the contract by failing to pay for the debt incurred.

Defendants further assert the affirmative defense of accord and satisfaction, claiming that an October 1, 2007, statement sent to them showed the outstanding balance as zero. The statement reads: "9/27/2007 Credit: Bad Debt $232,374.83 CR." Def.'s App. 6. Defendants contend this reflects FleetCor's acceptance of the $15,000 as payment for the outstanding debt, or at least a portion of the debt owed. Plaintiff counters that the statement merely reflects its write-off of the bad debt from its books for accounting purposes and does not demonstrate an agreement to simply forgive the debt.

The defense of accord and satisfaction "rests upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted." *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969) (citing *Industrial Life Ins. Co. v. Finley*, 382 S.W.2d 100 (Tex. Sup. 1964)).

The evidence must establish an assent of the parties to an agreement that the amount

- 5 -

> paid by the debtor to the creditor was in full satisfaction of the entire claim. The minds must meet and where resting in implication the facts proved must irresistibly point to such conclusion. There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. It has been said that the conditions must be made plain, definite and certain; that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation; that the offer must be accompanied with acts and declarations which the creditor is "bound to understand."

*Jenkins*, 449 S.W.2d at 455 (internal citations omitted). "[W]ithout additional consideration, a debtor's part-payment of a liquidated debt does not constitute an accord and satisfaction, even if the creditor and debtor agree that the debt is thereby discharged." *Long v. Turner*, 134 F.3d 312, 316 (5th Cir. 1998). Additionally, "a write-off of a debt on the creditor's books is an accounting practice that does not of itself amount to a discharge or release of the debt." *Id.*

As evidence of its payments to FleetCor, Defendants have provided two check stubs totaling $15,000. Def.s' App. 7–8. Yet Plaintiff's documentation shows that it credited Defendant with two check payments totaling $15,000, corresponding to the dates of the checks in July and August 2007. A review of Plaintiff's accounting shows this amount was credited to Defendants' account and therefore subtracted from the Plaintiff's calculation of Defendants' outstanding balance. The zero-balance statement was sent after the filing of the instant lawsuit and expressly notes that the amount was considered "bad debt." As such, it cannot amount to a discharge or release. *See Long*, 134 F.3d 316.

Thus, there was no additional consideration provided by Defendant, and no assent by the parties to an agreement that payment of the $15,000 would satisfy the entirety of the debt. Other than the two check stubs, Defendants have provided no documentation as to additional payments nor

any sworn statements attesting to when such payments were made or how much the payments totaled. Defendants have provided no cancelled checks, bank statements, or other documentation that would create a fact issue. Thus, Defendants have wholly failed to produce evidence that would raise a genuine issue of material fact, and summary judgment is appropriate for Plaintiff.

### B.     Smith's Personal Liability

Plaintiff seeks to hold Smith, Bulk Services' president, personally liable for the debt. Plaintiff points to the terms of the credit agreement, which Smith signed as a personal guarantor for Bulk Services' payment of debts incurred.

Defendant Smith has contended that he is not personally liable because FleetCor actually breached the agreement, the zero-balance statement of October 2007 constitutes an accord and satisfaction, and because gas companies, like FleetCor, were price gouging. Smith has further contended that a handwritten notation of a $135,000 credit limit on the application limits his liability to no more than that amount.

Because the Court has found that FleetCor did not breach the agreement and the zero-balance statement does not demonstrate accord and satisfaction, the first two arguments are inapplicable. Further, Smith's belief that FleetCor was price gouging is supported by no evidence and appears wholly irrelevant to his personal liability for the debt incurred.

Turning to the $135,000 notation, Plaintiff contends that it was simply a proposed internal credit limit for Bulk Services purchases. Plaintiff notes that it was in a below-the-line section marked for "office use only," and FleetCor never sent any information to Bulk Services or Smith showing a credit limit on the account. Plaintiff's accounting shows Bulk Services had outstanding

debt of more than $135,000 in June 2005—within a month of the company commencing use of the Fuelman cards. There is no indication that Smith ever saw the notation prior to this litigation, and it was not part of the contract to which he agreed. Thus, summary judgment is appropriate for Plaintiff, and Smith is personally liable as guarantor of the debt.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment against Defendants Bulk Services and Donald Smith. The Court will consider FleetCor's request for attorneys' fees if filed as a separate motion. Accordingly, the Court will enter a separate judgment for Plaintiff FleetCor in the amount of $232,374.83 plus attorneys' fees, costs, and interest, if any.

**SO ORDERED**.

Signed July 7, 2009.

_____
Ed Kinkeade
United States District Judge